Guide Realty Company v. Commissioner.
Guide Realty Co. v. Commissioner
Docket No. 19663.
United States Tax Court
1950 Tax Ct. Memo LEXIS 180; 9 T.C.M. (CCH) 462; T.C.M. (RIA) 50143; June 8, 1950
*180 Reasonable compensation for two principal stockholder-officers of petitioner determined for years 1941 to 1944, inclusive. Lawrence A. Baker, Esq., 730 Fifteenth St., Washington 5, D.C., for the petitioner. John J. Madden, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for the calendar year 1944 in the amount of $7,060.86 and a deficiency in the amount of $33.47 in declared value excess profits tax for the same year. The only issue raised by the parties is the allowable deduction for compensation of two officers of petitioner. Respondent allowed total compensation for these two officers in the amount of $10,000 per year for each of the years 1941 through 1944 as compared with $24,000 per year claimed by petitioner. The disallowance of salaries for the years 1941, 1942, and 1943 are here involved because of net operating loss carry-overs and carry-backs for those years. Certain other adjustments made by respondent to petitioner's net income for 1944 have not been contested. Findings of Fact Petitioner is a New York corporation with principal offices at 143 West *181 72nd Street, New York, New York. It filed its income and declared value excess profits tax returns for the years here involved with the collector of internal revenue for the third district of New York. Petitioner was organized in 1906 by Arlington C. Hall and Harvey M. Hall as a real estate corporation to engage in building construction and the general operation and management of real estate properties. Petitioner had an original paid-in capital of $10,000 represented by common stock of which each of the Halls owned 50 per cent. Their ownership of petitioner remained unchanged from 1906 through the years here involved. In 1944, petitioner showed an earned surplus of $681,304.06 on its income tax return. Dividends paid by petitioner from 1913 through 1944 amounted to $401,200. The annual dividend in 1941, 1942, and 1943 was $33,000. There was no dividend in 1944. Petitioner's gross assets at book value as of December 31, 1941, 1942, 1943, and 1944 amounted to $1,782,191.91, $1,723,595.87, $1,629,457.26 and $1,384,048.42. Arlington C. Hall served as president and Harvey M. Hall as secretary-treasurer of petitioner from the date of its incorporation through the years here involved. *182 Petitioner's business success was largely attributable to their abilities. In addition to petitioner, the Halls owned and managed a companion real estate enterprise, the A. C. & H. M. Hall Realty Company. During the years from 1941 to 1944, inclusive, petitioner owned the following income producing real estate: SUMMARY OF INCOME PRODUCING REAL ESTATE OWNED BY GUIDE REALTY COMPANY DURING THE YEARS 1941, 1942, 1943 and 1944 Premises
Type of Improvement
Constructed or Renovated by Petitioner
Operated with Assistance of Agents
Number of Rental Units
136/50 Dyckman St.
1 story taxpayer *
Renovated
Yes
15
160/66 Dyckman St.
2 story taxpayer
Renovated
Yes
21
199/205 Dyckman St.
1 story taxpayer
Renovated
Yes
10
109/21 E. Tremont Ave.
1 story taxpayer
Renovated
Yes
8
540 W. 122nd St.
6 story apartment with 2 stores
Constructed
Yes
32
22 Riverside Dr.
16 story apartment and penthouse
Constructed
Yes
33
323 W. 74th St.
5 story apartment
Renovated
Yes
9
3300/18 Broadway
3 story auto sales rooms and service station
Constructed
No
1
161/67 Dyckman St.
1 story bank and taxpayer leased to bank in entirety under a net lease
Constructed
No
1
Total - 130
*183 Gross Rentals Collected
Premises
1941
1942
1943
1944
136/50 Dyckman St.
$ 31,448.95
$ 32,849.61
$ 29,484.24
$ 32,338.38
160/66 Dyckman St.
33,549.77
30,340.89
26,549.98
26,863.97
199/205 Dyckman St.
10,899.79
10,079.66
8,374.93
8,614.00
109/21 E. Tremont Ave.
4,441.53
3,666.00
2,975.00
2,984.75
540 W. 122nd St.
2,455.00
29,161.00
29,324.36
30,277.10
22 Riverside Dr.
43,643.70
42,137.25
44,738.94
46,166.44
323 W. 74th St.
7,736.43
7,415.00
7,412.50
8,152.49
3300/18 Broadway
17,000.00
17,809.46
17,268.60
10,063.00 **
161/67 Dyckman St.
18,000.00
18,000.00
18,000.00
18,000.00
Total
$169,175.17
$191,458.87
$184,128.55
$183,460.13
During the period 1906 to 1941, petitioner was engaged extensively in the erection of new buildings and in the renovation of other properties. Petitioner in 1942 completed an extension to one of its taxpayer properties. Because of wartime restrictions on building materials, plans for other construction were curtailed during the period, one undertaking being halted after a $30,000 excavation *184 job had been completed. Petitioner employed eight individuals, including the Halls, in its office during the years here involved. Although petitioner employed agents for most of its properties who would deal directly with the tenants, final approval of rentals and of major repairs and decorations was reserved by petitioner's officers. Petitioner maintained records in its office of all transactions to protect it if it were found necessary to take action against any of its agents. Petitioner handled the placing of all insurance on its properties and paid the insurance premiums through its office. Petitioner kept the social security records for all the building employees in its properties. Petitioner did not manage any property owned by others than itself. The compensation of the agents employed by petitioner to aid in the operation and management of some of its properties was based upon oral understandings between the Halls and the agents. The compensation ordinarily amounted to 3 per cent of the rentals, a lower figure than the agents would have demanded if petitioner had not assumed a number of managerial functions that would normally have been entrusted to the agents. The agents *185 sent in monthly reports to petitioner on forms supplied by it. These reports showed the names of all tenants, their monthly rents, amount of rent received from each tenant, arrears, if any, and the nature and amount of any repairs made. The reports were checked in petitioner's office and the information transcribed into records maintained by petitioner for each rental unit owned by it. Arlington and Harvey Hall devoted their full business day, and occasionally night work as well, to the affairs of petitioner and its companion enterprise, the Hall Realty Company. They divided the managerial and financial responsibilities of petitioner between them. Both the Halls performed frequent personal inspections of petitioner's properties, hired superintendents for each of the buildings, and employed agents to help operate some of the properties. They supervised the activities of the agents, including the approval of leases and major repairs, supervised petitioner's office staff, consulted with other real estate operators concerning new developments, changes in neighborhoods, and real estate trends, consulted with engineers and architects about plans for new construction and with attorneys *186 about the legal problems involved in the acquisition of additional properties, and investigated other Manhattan realty with a view to the purchase of properties or mortgages. The reasonable value to petitioner of the services of Arlington C. Hall and Harvey M. Hall was $12,000 per year for each of them for the years 1941 to 1944, inclusive. Opinion ARUNDELL, Judge: Our ultimate finding of fact is dispositive of the only issue in this proceeding, the reasonable compensation of petitioner's two stockholder-officers for the years 1941 to 1944, inclusive. The question of allowable deduction for compensation of corporate officers is essentially a fact finding determination. ; , certiorari denied, . The respondent determined that the salaries of $12,000 per annum which petitioner paid to each of its officers, Arlington C. and Harvey M. Hall, in the years in question, was unreasonable compensation. Instead, respondent fixed the sum of $5,000 per year as a reasonable salary for each of them. In support of the latter figure, respondent *187 argues (1) the presumptive correctness of his determination and (2) a change in the nature of petitioner's business because of the wartime restrictions upon civilian construction. Petitioner has adequately met and overcome the presumption of correctness which attaches to the respondent's finding. Cf. Petitioner has shown that both the Halls devoted their full time to the affairs of petitioner and the similar companion enterprise, the A. C. & @H. M. Hall Realty Company. For their services to the latter company the Halls were separately compensated by it in commensurate amounts. The success of petitioner in prior years, as evidenced by its large earned surplus account, was almost wholly attributable to the abilities of the Halls. They were recognized as important men in New York real estate circles and, in view of petitioner's past business record attesting to their enterprise and skill, the salaries paid them by petitioner appear neither excessive nor unreasonable. While it is true that petitioner's construction activities were greatly curtailed by wartime restrictions on civilian building, petitioner made it clear that the role of the Halls *188 in planning new construction developments was not limited to the quantity of physical building actually undertaken. The process of selecting likely sites, determining the most advantageous type of structure which could be erected, and conducting the preliminary negotiations with architects, engineers, lawyers, and other realtors was not the type of activity that would have to be completely abandoned during the building hiatus of the war period. Further, even if we assume respondent's contention that the duties and responsibilities of the Halls were not as onerous in the years here involved as they had been in prior years, we still would find ourselves unable to say that the compensation paid them by petitioner was unreasonable. Although petitioner was engaged in relatively little building activity during the period, the Halls still determined all important management decisions relating to petitioner's income-producing property. For most of the properties they employed agents to handle the routine functions of dealing with the tenants, but the agents were not permitted to lease, fix rentals or decide upon major repairs and improvements without authorization by the Halls. Close contact *189 with the agents was maintained and detailed monthly reports were required of them. From the testimony as a whole we draw no inference that petitioner merely constituted a real estate holding company and engaged in no substantial business activities. On the contrary, the operation of petitioner's income-producing properties entailed a large amount of detailed management and supervision as well as important policy decisions upon the feasibility of investment in new ventures. The responsibility for these decisions rested with the Halls. We can discover in the record nothing that would warrant a finding that reasonable compensation for these services rendered by the Halls to petitioner was worth less than what it paid them. Furthermore, in the years here questioned by respondent, the Halls received the identical compensation that had been paid them for a period of over ten years. Although the allowance of a claimed deduction for a prior year would not be binding upon the respondent in regard to the subsequent and different tax years here considered, it is an evidentiary fact bearing upon reasonableness and deserves inclusion in the totality of factors which must affect our determination. *190 . Petitioner here has not introduced evidence of usual salaries in similar businesses but, even if introduced, such evidence would be merely another factor for consideration and would not necessarily be determinative. , certiorari denied, . Although petitioner is a closely held family corporation, we have found no indication that the compensation in question amounted to a disguised distribution of past profits. Cf. ; . Giving proper weight to all the circumstances we have enumerated, we conclude that the salaries in question constitute reasonable compensation. Decision will be entered under Rule 50. Footnotes
*. Taxpayer denotes a one-story mercantile structure.↩
**. Conveyed on 8/20/44.↩